(640 P 2d 875)
No. 52,686

Norma C. Collins, *Claimant,* v. Cherry Manor Convalescent Center, and Aetna Life and Casualty Company, Respondent and Insurance Carrier, *Appellees,* and Kansas Workmen's Compensation Fund, *Appellant.*

Opinion filed February 11, 1982.

*J. Paul Maurin, III,* of Kansas City, for the appellant.

*J. Eugene Balloun,* of Balloun & Bodinson, Chartered, of Olathe, for the appellees.

Before Foth, C.J., Spencer and Meyer, JJ.

Foth, C.J.: This is a dispute between the Workmen's Compensation Fund and an employer and its insurance carrier over who should pay benefits to a worker with a conceded job-related disability. The Fund appeals from the assessment of 90% of the claimant's benefits to it on a finding by the trial court that claimant had "knowingly misrepresented" herself as not having a handicap.

Aside from the critical "knowing misrepresentation" finding, the facts are largely undisputed. The claimant, 5'4'', 120-pound Norma C. Collins, first went to work for the respondent Cherry Manor Convalescent Center in Lawrence in the summer of 1977.

Six months later she quit to move to Topeka with her husband. At that time her superior noted: "I was pleased with her work. I would rehire." In August, 1978, she was reemployed at Cherry Manor as a dietary aide. On October 31, 1978, she injured her back while lifting a 50-pound milk container at work. Benefits for the resulting disability were agreed upon, with the Fund and the employer reserving the question of who should pay them.

Before her first employment at Cherry Manor, claimant had had several back injuries. During the winter of 1974, claimant was injured while lifting a frozen garage door. She saw a physician and was well in three or four days after treatment with hot packs. At Christmas time in 1975, Mrs. Collins bent over while cleaning her house. She coughed and sneezed at the same time and felt a sharp pain in her back and could not stand up. Dr. Wertzberger, an orthopedic surgeon, diagnosed a disc herniation and hospitalized her. He proposed surgery, but when she objected he discharged her from the hospital and prescribed conservative treatment. Mrs. Collins testified that her back began getting better after an episode in January, 1976, where she tripped on steps and landed in an upright position against a partition. On November 29, 1976, the claimant was again hospitalized after she slipped on icy water while washing clothes. Dr. Wertzberger's prescription at that time was conservative treatment, including physical therapy. He made no mention of the herniated disc, and she was released after four days. It is this history which forms the basis for the trial court's disputed finding of "knowing misrepresentation."

The statutory scheme for imposing liability on the fund is well established. Under K.S.A. (then 1977 Supp.) 44-567 an employer who *knowingly* employs or retains a "handicapped" employee may be partially or totally relieved of liability for benefits otherwise due the employee. Here, the relief would be to the extent the current disability was attributable to the claimant's preexisting physical impairment, found by the trial court to be 90%.

Under K.S.A. 44-567(c) (then 1977 Supp. 44-567[b]) knowledge of the preexisting impairment or handicap is conclusively imputed to the employer "if the employee, in connection with an application for employment or an employment medical examination or otherwise in connection with obtaining or retaining employment with the employer, *knowingly:* (1) Misrepresents him-

self or herself as not having such an impairment or handicap; . . . (5) misrepresents himself or herself as not having any mental, emotional or physical impairment, disability, condition, disease or infirmity . . . ." Emphasis added.

The significance of the statutory requirement that the employee's misrepresentation be made "knowingly" was most recently discussed by this court in *Krauzer v. Farmland Industries, Inc.,* 6 Kan. App. 2d 107, 626 P.2d 1223, *rev. denied* 229 Kan. 670 (1981). The court, although disapproving reference to a statutory definition in the criminal code, did approve a definition of "knowingly" as being "purposefully and intentionally and not accidentally." It summarized:

"An employee who misrepresents the condition of his health to his employer solely by reason of accident or mistake without any awareness that he has done so cannot be said to have knowingly made the misrepresentation contemplated by K.S.A. 1980 Supp. 44-567(*b*)." Syl. ¶ 5.

The court there upheld a finding that the claimant's misrepresentation was not "knowingly" made even though, with a long history of treatment for back pain due to arthritis and degenerative changes, he had given negative answers to questions specifically asking for arthritis or back injuries. Reliance was placed on claimant's limited education (eighth grade), the lack of severity of his condition, his lack of symptoms when filling out the application, and his testimony that he was trying to complete the forms honestly. The key to the finding by both the trial court and this court on appeal was the mental state of claimant when he answered the employer's questions.

Here, Cherry Manor's employment application form contained just three questions relating to an applicant's physical condition. One was the date of the applicant's last physical examination, another the name of the family physician. The only relevant question simply provided a space for "Physical Disabilities" or "Chronic Illnesses." Claimant on her first application wrote "none"; when rehired a year later she left the space blank.

The Examiner, faced only with the present controversy between the Fund and the employer, found:

"Although claimant had been told previously in 1976 that she had had a herniated disc, she believed that this healed itself. There is no evidence to suggest that claimant knew that once having had a herniated disc there was a proclivity for further recurrences of the same problem, if indeed such was the case.

"The evidence fails to justify a finding that claimant was, in fact, a handicapped

person, as defined by K.S.A. 44-566(*b*) or that if she was she possessed knowledge of that fact, which would make withholding of such information actionable under K.S.A. 44-567(*b*)."

Accordingly the award was assessed in full against the employer.

After the award was entered and before review by the Director the present parties filed a stipulation that claimant was in fact a "handicapped" person. The Director found this did not affect the ultimate result, agreeing with the Examiner that any misrepresentation by claimant was not "knowingly" made. The Director observed "that claimant had somewhat of an imperfect picture as to what a handicapped individual was."

Both the Examiner and Director thus based their findings on a consideration of the subjective "knowledge" of the claimant. Finding her statement that she had no "physical disabilities" to have been made in good faith and presumably within her reasonable understanding of the question asked, they both concluded that she had not "knowingly" misrepresented her condition.

In the district court, on the other hand, the focus was shifted from claimant's subjective knowledge to a more objective evaluation of her representations. The trial court's memorandum decision recites:

"The Director looked into the mind of the claimant: Was she knowledgeable? Did she really feel she had any physical disabilities? Had she really had leg pains for several years? That is not the focus of the Act. Employees come in assorted varieties of mental ability. Compound that with the fact that in this case the doctors had much trouble with subjective evaluations of malingering or psychogenic overlay, vis-a-vis actual pain and injury, and the difficulty of following that path becomes readily apparent. It is more productive to look to: (1) the facts that existed, (2) the information actually conveyed, and (3) the result upon the mind of the employer. This is where I believe the focus of the Act lies.

"On July 5, 1977, when claimant answered "NONE" to the first application on file she did not accurately characterize the facts as shown in Dr. Wertzberger's deposition. She did not have to understand the medical terminology. A single statement of back trouble would have sufficed. On August 30, 1978, when she left the box blank on the second application she did not fairly apprise the employer of her medical history. Failing to state that which she knew previously existed amounts to misrepresentation. Leaving the box blank was tantamount to saying "none" or "n/a." Some people might just draw a line.

"If there is an actual misrepresentation of existing, known medical facts that results in the hiring of a handicapped employee, the employer should get the benefit of his act and be relieved of his liability under the Workmen's Compen-

sation Act as if he had actual knowledge of the pre-existing impairment. Here Dr. Wertzberger told claimant what her problem was in 1976. For whatever reason, she failed to convey that to her employer — not once, but twice. To find that the employee knew what she should have known from such clear medical facts is far better than to try to guage her mens rea, as it were, and I find there was a knowing misrepresentation of her stipulated handicap."

Under this view, whether the question sufficiently called for revelation of the past problem, claimant's capacity to understand the question asked of her, her actual understanding, and her bona fides in answering, are all irrelevant. As the trial court saw it, claimant knew she had had a ruptured disc and did not reveal it; that was enough to make her answer a "knowing misrepresentation."

We believe this is the wrong analysis under *Krauzer*. Under that case "knowing" refers to the state of mind of the claimant. That state of mind may, of course, be proved by circumstantial evidence. All the factors listed above are relevant to the question, and there are doubtless others, each of which must be weighed. For example, there is no doubt claimant knew she had once had a diagnosis of a ruptured disc. However, the question asked, unlike that in *Krauzer,* did not call for a past history of back trouble. Instead it called for any present condition coming under the category of "physical disabilities." It seems to us even a highly educated person with claimant's medical history might not have thought of herself as being physically disabled. While there was some evidence of recurring pain, she had engaged in strenuous activities as a housewife and had also done the work in question for Cherry Manor for some six months with no apparent difficulty.

We are not, however, required to resolve the factual questions surrounding claimant's state of mind; our jurisdiction is limited to questions of law. K.S.A. 44-556(*c*). It is enough for us to find that in resolving the critical question of fact in this case the trial court employed an erroneous legal standard. It is entitled to redetermine that fact in the light of *Krauzer* and what is said in this opinion.

The judgment is vacated and the case is remanded for new findings and conclusions in harmony with this opinion.